No. 88–6059.  DePEW *v.* OHIO.  Sup. Ct. Ohio.  Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL J., dissenting), I would grant the petition for certiorari and vacate the death sentence in this case. Even if I did not hold these views, I would still grant the petition for certiorari. By any reasonable measure, the prosecutor's comments to the jury " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden* v. *Wainwright*, 477 U. S. 168, 181 (1986), quoting *Donnelly* v. *DeChristoforo*, 416 U. S. 637, 643 (1974).

Petitioner was convicted of aggravated murder and sentenced to death. The Ohio Supreme Court identified four instances of prosecutorial misconduct, but concluded that, because of the brutal nature of the crime, they neither singly nor cumulatively deprived petitioner of a fair trial.

The first was the prosecution's inquiry, during cross-examination of a defense witness, into a "knife fight" during which petitioner had allegedly been cut. The knife fight was wholly unrelated to the alleged murder, and the judge accordingly admonished the jury to disregard the prosecutor's reference to it. 38 Ohio St. 3d 275, 284, 528 N. E. 2d 542, 553 (1988).

The second was the prosecutor's comment during closing argument that, if petitioner had taken the stand, the prosecutor would have inquired into petitioner's criminal convictions *after* the date of the alleged murder. The judge again ordered that the jury disregard the prosecutor's comment, and the prosecutor apologized to the jury, saying: "'I shouldn't have said that. I wish you would just forget that because there's nothing like that here.'" *Ibid.*

The third was the prosecutor's introduction into evidence, during the penalty phase, of a photograph of petitioner standing next to a marijuana plant. The prosecutor adverted to this photograph during the penalty phase. The State Supreme Court found the introduction of this photograph to be error, but concluded: "The factors supporting death as a penalty were so persuasive and so numerous that this single photograph cannot be regarded as having materially prejudiced [petitioner]." *Id.*, at 287, 528 N. E. 2d, at 555.

Fourth and finally, the prosecutor made various improper closing-argument comments, "by reminding the jury that any sentence less than death could result in eventual parole, by alluding to facts not in evidence, by asking the jury why [petitioner] did not call certain persons to the stand, and by appealing to the jury's desire for law and order." *Ibid.* The State Supreme Court again found these comments only harmless error.

In my view, it is beyond serious dispute that these prosecutorial actions cumulatively deprived petitioner of a fair trial. The dissenting State Supreme Court judge characterized these actions, quite properly in my view, as "prosecutorial misconduct of the worst sort." *Id.*, at 293, 528 N. E. 2d, at 560 (Wright, J., concurring in part and dissenting in part). Even the majority, so

tolerant of these abuses, found it necessary to state: "While the prosecutorial misconduct in this case does not require a reversal of appellant's sentence, we express our mounting alarm over the increasing incidence of misconduct by both prosecutors and defense counsel in capital cases." *Id.*, at 288, 528 N. E. 2d, at 556. I would accordingly grant certiorari here to clarify that behavior such as that outlined above is simply not constitutionally acceptable and to correct the errors in this case which may have been responsible for putting petitioner on death row.