[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This appeal comes to us from a judgment of conviction and imposition of sentence issued by the Lucas County Court of Common Pleas. There, appellant was found guilty of aggravated murder with specifications, aggravated arson and aggravated robbery. Because the trial court did not err in sentencing appellant or in admitting appellant's confession into evidence, we affirm.
In the late afternoon hours of January 29, 1996, sixty-two year old Jeanette Johnson was murdered in her home. Her husband, upon returning home from an errand, found her beaten body lying on the kitchen floor. Her body had been set on fire. Mr. Johnson told police that he suspected that appellant, Johnnie Jordan, was the perpetrator. Jordan was the Johnsons' fifteen year-old foster son.
After searching several hours for appellant, the police found him walking along the street at approximately 11:45 p.m. Jordan initially told police that his name was "James Black." However, police took appellant to be viewed by a former foster parent who revealed his true identity. Jordan was then taken into custody for an outstanding probation violation.
After reading Jordan his Miranda rights and obtaining his written waiver, two detectives interviewed him for approximately one and one-half hours. They then took him to his girlfriend's home to verify whether he had been with her during the time of the murder. After that, between 4:30 and 5:30 a.m., appellant was taken to be held at the Child Study Institute ("CSI"), pending further proceedings.
The next morning, appellant's probation[1] officer visited him at approximately 10:00 a.m. for the purpose of discussing his probation violation. During the discussion, the probation officer commented on the murder and its effect on Mr. Johnson, but did not ask appellant directly as to his possible involvement. Appellant at first denied being at the Johnsons' house when the murder occurred. However, as the probation officer turned to leave, appellant suddenly spoke out and admitted killing his foster mother. Appellant then indicated that he thought he "needed help" and wanted to talk to police.
The probation officer called the investigating detectives who came to CSI at approximately 11:00 a.m. After again receiving hisMiranda rights, appellant signed a written waiver of those rights. The detectives then tape recorded appellant's answers to questions and statements in which he admitted killing his foster mother.
Ultimately, appellant was charged with delinquency based upon the alleged murder of his foster mother. On April 19, 1996, the juvenile court certified appellant to be tried as an adult and transferred the case to the Lucas County Court of Common Pleas, General Division. On May 7, 1996, appellant was indicted on three counts: aggravated murder in violation of R.C. 2903.01(B), with two specifications of aggravating circumstances; aggravated robbery in violation of R.C. 2911.01(A)(2); and aggravated arson in violation of R.C. 2909.02(A). Appellant entered a plea of not guilty to all counts, and the case was set for trial.
Prior to trial, appellant moved to suppress his confession and other statements made to police the morning after his arrest. Appellant argued that the statements made to his probation officer and the subsequent statements made to the police were not admissible because the probation officer had not againMirandized him. Appellant also claimed that the statements were not voluntary because appellant had been deprived of sleep and had been intensely interrogated by the probation officer. On August 23, 1996, after a series of hearings, the trial court denied appellant's motion to suppress.
Trial was then held before a three judge panel. At the conclusion of the proceedings, appellant was found guilty on all three counts along with the specifications. He was sentenced as follows: Count I, aggravated murder — life imprisonment with parole eligibility after thirty years; Count II, aggravated robbery — not less than ten nor more than twenty-five years; and Count III, aggravated arson — not less than ten nor more than twenty-five years. Counts two and three were ordered to be served concurrently to each other but consecutively to the sentence for Count I.
Appellant now appeals, setting forth the following two assignments of error:
"First Assignment of Error
 "The Trial Court Erred When It Sentenced Defendant-Appellant Pursuant to the Death Penalty Provision Under O.R.C. § 2903.01(a), Denying Defendant-Appellant His Right to Due Process and Equal Protections Provided for in the United States and Ohio Constitutions.
"Second Assignment of Error
 "The Trial Court Erred in Failing to Suppress the Statements of Defendant-Appellant in Violation of His Constitutional Rights."
 I.
Appellant, in his first assignment of error, argues that due to his status as a juvenile, the trial court improperly imposed sentence on him under the Death Penalty statute.
Generally, a court of appeals will not reverse the trial court's exercise of discretion in sentencing where the sentence falls within statutory limits. Toledo v. Reasonover (1965),5 Ohio St.2d 22. At the time of appellant's offense, R.C.2929.03(E), the statutory sentencing provision for aggravated murder, provided, in pertinent part that:
 "(E) If the offender raised the matter of age at trial * * *, was convicted of aggravated murder and one or more specifications of an aggravating circumstance * * *, and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court or the panel of three judges shall not impose a sentence of death on the offender. Instead, the court or panel shall impose one of the following sentences on the offender:
 "(1) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;
 "(2) Life imprisonment with parole eligibility after serving thirty full years of imprisonment." [Emphasis added.]
In this case, appellant raised the matter of his age at trial. Thus, even though he was convicted of aggravated murder with two specifications, the death penalty could not be imposed upon him. However, rather than exempting appellant from the death penalty sentence alternatives, R.C. 2929.03(E) specifically provides for the sentencing of the under age eighteen offender. Therefore, the trial court did not err since appellant's sentence falls squarely within the guidelines of R.C. 2929.03(E).
Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in his second assignment of error, essentially sets forth two grounds in support of his claim that the trial court erred in denying his motion to suppress. First, he argues that his statements were not voluntary or intelligently made because he was sleep deprived and lacked the mental capacity to understand the significance of the rights' waiver. Second, appellant claims that he had a special relationship with his probation officer and, because of that relationship, the officer should have read him his Miranda rights before talking with him. As a result of the probation officer's failure, appellant's subsequent confession to the police should have been suppressed.
Absent an error of law, a trial court's decision on a motion to suppress will not be disturbed on appeal where substantial evidence exists to support the court's ruling. Maumeev. Johnson (1993), 90 Ohio App.3d 169, 171. Determining the credibility of witnesses in an evidentiary hearing on a motion to suppress is a function of the trial court. State v. Depew (1988),38 Ohio St.3d 275, 277, certiorari denied (1989), 489 U.S. 1042;State v. Fanning (1982), 1 Ohio St.3d 19, 20.
To determine whether or not a juvenile's confession was involuntarily induced a trial court should
 "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the juvenile defendant; the length, intensity and frequency of interrogation; the existence or physical deprivation or mistreatment; and the existence of threat or inducement." In re Watson (1989), 47 Ohio St.3d 86, paragraph one of the syllabus.
In applying this test, the trial court must carefully examine the validity of waivers of constitutional rights when minors are involved. In re Greer (Sept. 17, 1992), Cuyahoga App. No. 63037, unreported. See, also, In re Gault (1967), 387 U.S. 1. Statements by an in-custody probationer to his probation officer are inadmissible in a subsequent criminal trial, where prior to questioning, the probation officer failed to advise the probationer of his Miranda rights. State v. Roberts (1987),32 Ohio St.3d 225, syllabus. This may apply even when an offender has previously been given Miranda rights upon his initial arrest.Id. at 232. Where no additional Miranda warnings are given, whether or not the defendant's rights are sufficiently protected during subsequent interrogations depends on a totality of the circumstances test. Id.
We first note that although the trial court conducted three hearings concerning appellant's motion to suppress, the record includes transcripts from only the first two hearings conducted on August 2, 1996 and August 16, 1996. The final hearing, held on August 23, 1996, apparently included closing arguments and the trial court's analysis and denial of appellant's motion.[2] Neither party requested a transcript of this third hearing, and it is therefore not part of the record before us.
When faced with an inadequate or incomplete record, we must presume the regularity of the trial court's actions and accept its judgment. See Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Therefore, we must presume that the trial court properly examined all the facts and properly applied the totality of the circumstances test. We will therefore limit our review to whether or not substantial evidence was presented to support the trial court's ruling.
In the present case, evidence was presented at the suppression hearing which showed that appellant was firstMirandized and interviewed by police during the early morning hours of January 30, 1996 after being taken into custody. Appellant acknowledged that his daily schedule was such that he was usually awake and active during this time, as appellant slept during the daytime. In addition, evidence was presented that appellant was not handcuffed and was offered something to drink and eat during the interview, which lasted only one and one-half hours.
Appellant acknowledged that at the time the waiver was read to him he understood it, signed it, and then decided to talk with the detectives until they began to talk about the murder. Moreover, during this first interview, appellant made no incriminating statements since he denied any involvement in the crime. Thus, there is nothing to indicate that appellant, fifteen years old and well acquainted with police procedure, was overly tired, hungry or lacked the mental capacity to understand his rights or that he did not voluntarily relinquish them at this first interview.
As for the second police interview, before talking with appellant the next morning, the detectives again read appellant his Miranda rights, which he indicated he understood and then waived in writing. By this time, appellant had gotten some sleep and had eaten. The record reveals that appellant was questioned in a non-coercive and simple way; nothing was promised or offered to appellant to mislead him into confessing. Furthermore, appellant's statements to police are coherent and directly responsive to questions he was asked.
In fact, at the suppression hearing, appellant again acknowledged that the detectives had not threatened him or promised him anything, that he had understood his rights, that he had signed the waiver of rights and that he had never asked for an attorney. Once again, nothing in the record indicates that appellant was not fully alert and aware of his rights and the import of his decision to waive those rights.
We now turn to the issue regarding the probation officer's alleged coercion of appellant and the effect of the officer's failure to Mirandize him. While we agree that the better approach would have been for the probation officer to remind a probationer of his rights prior to discussing possible incriminating issues, in this case we cannot say that such failure was error.
Evidence was presented which showed that the probation officer only spoke with appellant for approximately one-half hour. Evidence was also presented that during that time, the officer did not attempt to coerce a confession from appellant or promise him leniency or therapy as an alternative to other penalties. Additionally, the record indicates that appellant's statements to the probation officer were not admitted at trial nor were they instrumental in getting him to confess to the police. On the contrary, evidence was presented that appellant voluntarily admitted killing Mrs. Johnson as the probation officer was about to leave. Appellant also agreed to talk to police if his probation officer would call them.
Finally, appellant was again apprised of his rights just prior to making his confession to the detectives. Consequently, even presuming that the probation officer should have Mirandized
appellant prior to speaking with appellant about the murder, such error, if any, was harmless.
Therefore, we conclude that the trial court's denial of appellant's motion to suppress his confession to police was supported by substantial evidence and was not contrary to law.
Accordingly, appellant's second assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 7/1/92.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ George M. Glasser, J.
JUDGE
 ____________________________ James R. Sherck, J.
JUDGE
CONCUR.
[1] We note that although the record refers to "parole officer," we utilize the term "probation officer" which was actually the officer's relationship to appellant.
[2] The court's decision to deny the motion was journalized in writing only on the court docket sheet.