Rhett Gilbert DePEW, Petitioner,

v.

Carl S. ANDERSON, Warden, Respondent.

No. C–1–94–459.

United States District Court,
S.D. Ohio,
Western Division.

March 31, 2000.

David Williamson, Bieser, Greer & Landis, Dayton, OH, Gary W. Crim, Dayton, OH, for Petitioner.

Charles Willey, Matthew J. Lampke, Asst. Attys. Gen., Capital Crimes Section, Columbus, OH, for Respondent.

DECISION AND ENTRY OVERRULING RESPONDENT'S OBJECTIONS (DOC. # 128) TO REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. # 125); DECISION AND ENTRY OVERRULING PETITIONER'S OBJECTIONS (DOC. # 130) TO REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. # 125); REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. # 125) ADOPTED, AS SUPPLEMENTED; WRIT OF HABEAS CORPUS GRANTED, VACATING PETITIONER'S DEATH SENTENCE; CERTIFICATE OF PROBABLE CAUSE ISSUED; LEAVE TO APPEAL *IN FORMA PAUPERIS* GRANTED; JUDGMENT TO BE ENTERED IN FAVOR OF PETITIONER AND AGAINST RESPONDENT ON FIRST CLAIM AND IN FAVOR OF RESPONDENT AND AGAINST PETITIONER ON ALL OTHER CLAIMS; TERMINATION ENTRY

RICE, Chief Judge.

On November 23, 1984, someone stabbed Theresa Jones, her seven-year old daughter Aubrey and her twelve-year old sister Elizabeth Burton, and then set fire to their house. All three victims died, two from knife wounds and the other from a combination of those wounds and the fire. On April 3, 1985, the Petitioner Rhett Gilbert DePew ("Petitioner" or "DePew") was arrested, pursuant to a warrant for an unrelated offense. He was questioned about the incidents that had occurred the previous November 23rd, and gave a recorded confession, indicating that he had stabbed the three victims and had started the fire. On April 5, 1995, an indictment was filed, charging Petitioner with three counts of aggravated murder, in violation of Ohio Revised Code § 2903.01(B). Each of those counts included three death penalty specifications or aggravating circumstances. Before his trial, the Petitioner moved to suppress his confession. After an extended hearing, Judge John Moser of the Butler County, Ohio, Court of Common Pleas issued a written decision denying that motion.

In accordance with the law in Ohio, the Petitioner's trial was bifurcated into guilt and penalty phases, with the same jury sitting and Judge Moser presiding at both. At the conclusion of the guilt phase, the jury found DePew guilty of all three offenses charged and of each of the death penalty specifications or aggravating circumstances. Although the Petitioner had not introduced any evidence during the guilt phase, he presented testimony from 20 witnesses and read his unsworn statement to the jury, during the penalty phase of his trial. After lengthy deliberations, the jury returned a recommendation that the death penalty be imposed. Judge Moser agreed and sentenced the Petitioner to death.

Petitioner appealed to the Butler County Court of Appeals, which affirmed his conviction and sentence. *State v. Depew,* 1987 WL 13709 (Ohio App.1987). Petitioner then appealed to the Ohio Supreme Court, which also affirmed. *State v. DePew,* 38 Ohio St.3d 275, 528 N.E.2d 542 (1988), *cert. denied,* 489 U.S. 1042, 109 S.Ct. 1099, 103 L.Ed.2d 241 (1989).

Having exhausted his direct appeals, DePew initiated an action in the Butler County Court of Common Pleas, requesting post-conviction relief pursuant to Ohio Revised Code § 2953.21. That request was denied, without an evidentiary hearing, and DePew appealed to the Butler County Court of Appeals, which affirmed. *See State v. Depew,* 1992 WL 193691 (Ohio App.1992). The Ohio Supreme Court denied Petitioner's request for further appeal. Thereafter, the Petitioner filed a second request for post-conviction relief under Ohio law. After having been afforded the opportunity to conduct discovery, the trial court denied that request. That decision was also affirmed by the Butler County Court Appeals, following which the Ohio Supreme Court denied further review. *State v. DePew,* 97 Ohio App.3d 111, 646 N.E.2d 250 (1994), *appeal not allowed,* 71 Ohio St.3d 1444, 644 N.E.2d 407 (1995). In addition, Petitioner's two requests to reopen his direct appeal were denied.

After having exhausted his available state remedies, Petitioner initiated this action, requesting a writ of habeas corpus, alleging that his conviction and sentence violated a number of provisions of the United States Constitution. In particular, the Petitioner asserted 13 separate grounds or claims for relief.[1] On March 9, 1995, this Court referred the matter to Magistrate Judge Michael Merz for a Report and Recommendations. *See* Doc. # 9. On June 8, 1999, after having conducted an evidentiary hearing, Judge Merz issued his Report and Recommendations. *See* Doc. # 125. In particular, that judicial officer recommended that the Court deny the Petitioner's request for a writ of habeas corpus, with respect to 12 of the asserted grounds, and that the Court conditionally grant the request with respect to the Petitioner's First Claim.[2] Both the Respondent (Doc. # 128) and the Petitioner (Doc. # 130) have filed Objections to that judicial filing.

■ Since the Petitioner filed this action before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, the amended version of 28 U.S.C. § 2254(d) is not applicable herein. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The Sixth Circuit has indicated that a District Court must apply a *de novo* standard of review to the Report and Recommendations of a Magistrate Judge in a habeas corpus proceeding. *Flournoy v. Marshall,* 842 F.2d 875 (6th Cir.1988). Accordingly, this Court reviews both Judge Merz' factual findings and his legal conclusions *de novo.* After having conducted such a review, this Court, based upon the reasons set forth by Judge Merz in his Report and Recommendations, as supplemented by following, overrules the Objections filed by both the Respondent and the Petitioner. The Court begins by setting forth its supplemental reasoning regarding the Respondent's Objections, following which it will turn to those filed by the Petitioner.

*I.  Respondent's Objections (Doc. # 128)*

As is indicated, Judge Merz recommended that this Court grant a writ of habeas corpus on the Petitioner's First

---

**1.** The Respondent concedes that the Petitioner has exhausted all of his Claims and that the doctrine of procedural default does not bar this Court from addressing the merits of one or more or all of those Claims. *See* Respondent's Return of Writ (Doc. # 48) at 32–34.

**2.** Since the Petitioner's First Claim arises out of prosecutorial misconduct occurring only during the penalty phase of Petitioner's trial, the Magistrate Judge recommended that the Petitioner be granted a new trial on the penalty phase.

Claim. With that Claim, the Petitioner had alleged that the death sentence imposed upon him was unreliable, because prosecutorial misconduct so infected the penalty phase of his trial as to deny him a constitutionally mandated fair trial, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Since Judge Merz accurately and thoroughly set forth the prosecutorial misconduct of which the Petitioner complains in his Report and Recommendations (*see* Doc. # 125 at 14–15), this Court will not recount that misconduct in detail herein. Rather, this Court need only quote the summary of that misconduct contained in the majority opinion for the Ohio Supreme Court, during Petitioner's direct appeal:

As outlined above, the prosecutor in this case openly declared at a pretrial hearing that he did not care whether appellant received fair treatment. Later[,] the prosecutor informed the jury of an alleged knife fight, which was not in evidence, and implied thereby that appellant was guilty of wrongdoing, of which there was absolutely no evidence. Further, the prosecutor commented to the jury on a subsequent conviction of appellant, unsupported by any evidence in the record, and then [after being admonished by the trial judge, who had previously warned against mention of such] told the jury that no such conviction existed. The prosecutor then further exhibited and commented on a totally irrelevant photograph depicting appellant next to a marijuana plant. Further, the prosecutor, in his closing remarks at the penalty stage, told the jury that "[i]t's not necessarily true that if you get three counts of twenty to life that it will add up to sixty—that's not necessarily true." While this does not involve a *total* misstatement of the law

(see R.C. § 2967.13[D] and [E] ), it certainly could be construed as misleading.

While all these comments, taken together or even standing alone, constitute unreasonable and unfair conduct by the prosecutor, we must balance against that conduct the admission of appellant that he brutally stabbed to death a young mother, her daughter and her younger sister and then mutilated their bodies by fire. In cases such as this, we cannot ignore the compelling interest of the public, which has every right to expect its criminal justice system to work effectively.[3]

38 Ohio St.3d at 288, 528 N.E.2d at 556–57 (emphasis in the original). The Ohio Supreme Court also noted that a criminal defendant had a right to a fair trial and suggested that prosecutorial misconduct, such as that which had occurred during DePew's trial, would be addressed in the future by referring such matters to the Disciplinary Counsel. *Id.* at 288–89, 528 N.E.2d at 557.[4]

The Sixth Circuit has indicated that when prosecutorial misconduct "rises to the level of depriving the defendant of fundamental fairness in the trial process, the claim is remediable on a petition for habeas corpus relief." *Serra v. Michigan Dept. of Corrections,* 4 F.3d 1348, 1354 (6th Cir.1993), *cert. denied,* 510 U.S. 1201, 114 S.Ct. 1317, 127 L.Ed.2d 666 (1994). In *Boyle v. Million,* 201 F.3d 711 (6th Cir. 2000), the Sixth Circuit discussed the factors a court should consider when deciding whether to grant a writ of habeas corpus on the basis of prosecutorial misconduct:

In *United States v. Carroll,* 26 F.3d 1380 (6th Cir.1994), we summarized our recent jurisprudence on the issue of prosecutorial misconduct in an effort to provide guidance for future cases and noted that, when addressing claims of

---

3. Although the Ohio Supreme Court referred to prosecutor in the singular, there were in reality three such individuals involved in De-Pew's prosecution—County Prosecuting Attorney Holcomb and two of his assistants.

4. Justices Craig Wright and Herbert Brown dissented.

prosecutorial misconduct, we first determine whether the challenged statements were indeed improper. *See United States v. Francis,* 170 F.3d 546, 549 (6th Cir.1999). Upon a finding of such impropriety, we then "look to see if they were flagrant and warrant reversal." *Id.* (citing *Carroll,* 26 F.3d at 1388). Flagrancy is determined by an examination of four factors: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Id.* at 549–50.

*Id.* at 717. *Accord, Serra,* 4 F.3d at 1355–56.

As an initial matter, it cannot be questioned that the conduct in which the prosecutors engaged during the penalty phase of DePew's trial was improper. The Ohio Supreme Court so found, and the Respondent has not challenged that finding in this litigation. In his Report and Recommendations, Judge Merz found that the first three factors identified by the Sixth Circuit favored the conclusion that Petitioner had been denied a fair penalty phase of his trial as a result of the prosecutorial misconduct. *See* Doc. # 125 at 16–17. This Court agrees. Not only did the prosecutor's misconduct tend to mislead the jury and to prejudice the Petitioner, it was intended to accomplish that end. Moreover, rather than the prosecutorial misconduct being an isolated incident, the prosecution engaged in a series of improper statements. In addition, the prosecution deliberately put the objectionable matters before the jury during the penalty phase of DePew's trial. That misconduct did not occur by accident. Indeed, in his Objections, the Respondent does not challenge Judge Merz' findings with regard to those

three factors. The Magistrate Judge noted that the fourth factor cut strongly against the Petitioner, given that he had confessed to murdering three individuals. *Id.* at 17. However, that judicial officer nevertheless concluded that the Petitioner's rights had been violated, because the United States Constitution does not allow the alternative remedy of referring a prosecutor's misconduct to a disciplinary counsel, when that misconduct has deprived the defendant of a fair trial. *Id.*

In his three and one-half page Objections, the Respondent takes aim at Judge Merz' conclusion that the prosecutors' misconduct denied a fair trial to Petitioner, despite the fact of the overwhelming evidence of the Petitioner's guilt, including his confession.[5] If the prosecutorial misconduct had occurred during the guilt phase of the Petitioner's trial, this Court might well have concluded that DePew's admission of guilt in his recorded confession outweighed any such misconduct, and that it was ultimately non-prejudicial. However, that misconduct occurred during the penalty phase, where the confessed actions of the defendant which constitute the aggravating circumstances, in and of themselves, do not necessarily, as a matter of fact or of law, outweigh the mitigating factors. Indeed, the·length of the jury's deliberations on the penalty to be recommended bears this out. Nevertheless, the Respondent contends that "[t]his is not a case in which it can be said that the prosecutors' improper arguments tipped the scales in favor of death." Doc. # 128 at 2. In addition, the Respondent argues that the Magistrate Judge improperly focused upon the culpability of the prosecutors, rather than upon the impact of the prosecutorial misconduct on the jury's recommendation that the death penalty be imposed on DePew. Thus, the Respondent contends that this Court should reject Judge Merz' recommendation and dismiss

---

5. The Respondent also points out that the Magistrate Judge quoted from and relied upon Justice Craig Wright's dissenting opinion in *Depew.* In its *de novo* review of Petitioner's First Claim, this Court does *not* rely upon that dissenting opinion.

the Petitioner's First Claim. For reasons which follow, this Court does not agree.

■■■ The prosecution engaged in the objectionable conduct, after the Petitioner had been found guilty of three counts of aggravated murder, with death penalty specifications or aggravating ' circumstances. However, the penalty phase of the Petitioner's trial had yet to occur. During that phase, the state would have the burden of proving, beyond a reasonable doubt, that the aggravating circumstances, found by the jury in the guilt phase, outweighed the mitigating factors. Ohio Rev.Code § 2929.03(D)(2). If the jury did not unanimously find that the state had met its burden of proof in that regard, the death penalty could not be imposed upon the Petitioner. *Id.* If, however, the jury unanimously found that the state had met that burden, it was required to recommend that the sentence be death. *Id.* Of course, the role of mitigating evidence in death penalty cases in not merely a matter of state concern. The United States Supreme Court has repeatedly stressed that there is a constitutional requirement that a defendant be permitted to introduce mitigating evidence, that is evidence as to "any aspect of [his] character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The reason for that is because "[t]he Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner." *Boyde v. California,* 494 U.S. 370, 377–78, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

The prosecutorial misconduct during the sentencing phase of DePew's trial destroyed his attempt to present mitigating evidence to the jury. Ohio law recognizes six specific mitigating factors and an additional general category for other factors that are relevant to whether the offender should be sentenced to death. Ohio Rev. Code § 2929.04(B). One of the specific mitigating factors upon which the Petitioner relied was his lack of a significant history of prior criminal convictions and juvenile convictions. *See* Ohio Rev.Code § 2929.04(B)(5). The Petitioner also relied upon the mitigating factor of youth § 2929.04(B)(4), since he was only thirty-one years of age. Under the general category for mitigating factors (§ 2929.04(B)(7)), he presented evidence that he was kind, generous, devoted to his family and remorseful about his crime and that he was gentle, rather than being a violent person. The prosecutorial misconduct unfairly and prejudicially struck directly at the Petitioner's theory of mitigation, based upon his lack of a significant prior criminal record, by making it appear that, even though Petitioner was without a such a criminal record, he was nevertheless a criminal. In addition, it unfairly undercut the evidence presented by the Petitioner to support his theory of mitigation under the general category. One of the prosecutors asked a witness, called by the Petitioner during the penalty phase, whether he was aware that the Petitioner had been "cut in a knife fight at the King Kwik." Trial Tr. at 341. However, the prosecutor did not have evidence that the Petitioner had been anything other than the innocent victim of an unprovoked attack during that confrontation. Nevertheless, through his improper question, the prosecutor was able to plant a seed in the jury's mind that the Petitioner had been involved in a serious criminal incident, a knife fight. Moreover, the reference to a knife fight could have unfairly and prejudicially caused the jury to question the Petitioner's mitigation evidence that he was a gentle individual who was not prone to violence. In addition, the prosecution introduced a picture of the Petitioner, during the penalty phase, showing him standing next to a growing marijuana plant. During closing argument, the prosecutor commented on the picture, noting that it showed the Petitioner "growing a little grass." Trial Tr. at 566–67. As the Ohio Supreme Court noted, that evidence and

argument was clearly irrelevant and improper. It also detracted from the Petitioner's plea to the jury that it should spare his life, because he did not have a significant history of prior criminal convictions, by painting him as someone who was involved in activities relating to controlled substances. Evidence and argument that the Petitioner had been involved in such activities as a knife fight and the growing of marijuana would certainly have lessened the impact of his other mitigation evidence, by making the fact that he was gentle (as opposed to being violent), kind, generous, devoted to his family and remorseful about his crime appear to be much less compelling reasons to spare his life. Additionally, the elected County Prosecutor discussed with the jury the Petitioner's failure to take an oath and testify during the penalty phase (DePew had merely read a brief, unsworn statement expressing his sorrow and remorse for having committed the offense and for having caused the victims' families to suffer). The Prosecutor speculated that the Petitioner had declined to testify, because, if he had, he would have been asked whether "he's ever been convicted of a criminal offense after the date in question in this case." Trial Tr. at 577–78. That comment was made despite the fact that Judge Moser had granted the Petitioner's motion in limine, precluding all mention of that conviction.[6] Indeed, in its brief filed with the Butler County Court of Appeals, during Petitioner's direct appeal,

the state conceded that it had been barred by Judge Moser from mentioning that conviction. *See* Respondent's Return of Writ (Doc. # 48) at Ex. H, p. 17. Once again, the prosecution improperly presented to the jury an indication that the Petitioner had been involved in criminal activity, thus detracting from his theory of mitigation.[7]

In sum, the Petitioner had confessed to brutally killing three innocent individuals. However, he asked the jury to spare his life, in part, because he did not have a significant prior record of criminal convictions. The misconduct by the prosecution cast the Petitioner in the role of a knife-fighting, marijuana-growing individual who had been convicted of a subsequent criminal offense, rather than as someone with an unblemished criminal record. That misconduct also unfairly and prejudicially undercut the Petitioner's mitigation evidence introduced under the general category, i.e., evidence supporting the proposition that he was gentle (as opposed to violent) kind, generous, devoted to his family and remorseful about his crime. Thus, this misconduct completely destroyed any opportunity Petitioner had to convince the jury that the prosecution had failed to prove, beyond a reasonable doubt, that the aggravating circumstances in his case outweighed the mitigating factors he had urged upon the jury. By doing so, the prosecution denied to Petitioner a fundamentally fair penalty phase proceeding. Consequently, although this Court does

6. It bears emphasis that § 2929.04(B)(5) defines the mitigating factor in terms of an offender's lack of a history of *prior* criminal convictions. Since the conviction to which the prosecutor alluded in his closing argument had occurred *subsequent* to the events giving rise to the Petitioner's prosecution, Judge Moser precluded mention of it.

7. After having been admonished by Judge Moser for mentioning the Petitioner's subsequent conviction, the Prosecutor apologized to the jury for suggesting that he would have asked DePew such a question, told the jury to disregard his remark and indicated that he hoped they would forget his remark, "because there's nothing like that here." Trial Tr. at 581. The Prosecutor's intentional ignoring of

the trial judge's ruling and admonition, by deliberately arguing a matter both improper *and* absent from the record, is clear evidence of a deliberate attempt to prejudice the jury against this Petitioner at the penalty phase of his trial. Such conduct, probably the most egregious that this Court has encountered in over 30 years as a Judge, is not mitigated by telling the jury, only after being admonished by the trial judge, that "there's nothing like that here." Indeed, such a post-admonishment, ambiguous comment could just as easily mean that there is no evidence before the jury of such a conviction (although it does exist), as it could that no such conviction ever occurred.

not dispute the Respondent's argument that Petitioner's confession rendered proof of his guilt overwhelming, this Court cannot agree that said confession insulates the prosecutorial misconduct at the penalty phase from scrutiny. As stated above, if this prosecutorial misconduct had occurred during the guilt phase of the Petitioner's trial, this Court might agree with the Respondent that Petitioner's confession to three brutal murders was sufficiently overwhelming to render such misconduct harmless. Occurring, as it did, during the penalty phase, however, the actions to which the Petitioner confessed did not necessarily, in and of themselves, outweigh the mitigating factors beyond a reasonable doubt. In *Boyle,* the Sixth Circuit addressed and rejected the argument that prosecutorial misconduct did not serve as the basis for federal habeas relief, because the evidence against the petitioner was strong:

> It is true that the case against Boyle was relatively straightforward and strong. Given the egregious and inflammatory nature of the behavior and arguments of the prosecutor throughout trial, however, we are left with "grave doubt" [great concern] as to whether the prosecutorial errors "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *see also O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

201 F.3d at 717–18. It could well be, given Petitioner's confession to three brutal murders, that, under no circumstances, could the aggravating circumstances have failed to outweigh the mitigating factors in this matter. However, the point is that due to the prosecutors' misconduct in the penalty phase of Petitioner's trial, the jury was deprived of the opportunity to exercise its statutorily mandated function of determining whether the prosecution had met its burden of proving, beyond a reasonable doubt, that those aggravating circumstances outweighed the mitigating factors. Having been deprived the opportunity to do so, given the Petitioner's confession and other evidence introduced by the prosecution during the guilt phase of the proceedings, the jury-recommended death penalty was foreordained.

At a sidebar conference, during the hearing on Petitioner's motion to suppress his confession, one of the Assistant County Prosecutors stated "I don't care what's fair to the defendant, your Honor." Trial Tr. at 127. That state of mind, captured for all eternity on the record of this trial, appears to have been the direct and contributing cause of the state's conduct during the penalty phase of this trial, conduct which caused prejudice to this Petitioner, by depriving him of a fair hearing on the question of whether he should live or die. Respondent would have this Court believe that this is not a case in which the prosecutorial misconduct tipped the scales in favor of death. To the contrary, this Court concludes that the misconduct which occurred during the penalty phase of Petitioner's trial removed the scales of justice from the courtroom entirely.

Accordingly, based upon the foregoing, the Court overrules the Respondent's Objections (Doc. # 128) to the Magistrate Judge's Report and Recommendations (Doc. # 125). That judicial officer's filing is adopted as to the Petitioner's First Claim.

## II. Petitioner's Objections (Doc. # 130)

■ The Magistrate Judge's Report and Recommendations are thorough, well written and have adequately addressed the Petitioner's arguments. Therefore, although this Court has conducted a *de novo* review of those arguments and the record before it, there is no need to "reinvent the wheel" through a written discussion of Petitioner's Third, Fourth, Sixth and Eighth through Thirteenth Claims. Rather,

based upon the reasoning, citations of authority and reference to the record in this matter set forth by Judge Merz in his Report and Recommendations (Doc. # 125), the Court overrules the Petitioner's Objections, as they relate to those Claims. The Magistrate Judge's Opinion is adopted to that extent.[8] The Court will, however, address the Petitioner's Objections, as they relate to his Second, Fifth and Seventh Claims, discussing together the Second and Seventh Claims.

### A. Petitioner's Second and Seventh Claims

These two claims share the same underlying theory, to wit: that Judge Moser was biased. With his Second Claim, the Petitioner argues that his conviction and sentence were obtained in violation of his rights under the Fifth, Sixth and Fourteenth Amendments, because they were based upon his confession which should have been suppressed. According to Petitioner, his confession was obtained in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and was involuntary.[9] In rejecting that Claim, Judge Merz concluded that the factual findings made by Judge Moser were entitled to the presumption of correctness, in accordance with the pre-amendment version of 28 U.S.C. § 2254(d). The Petitioner objects, arguing that Judge Merz erred by according deference to those factual findings, because Judge Moser's bias caused Petitioner to be denied a full, fair and adequate hearing on his request to suppress his confession. *See* 28 U.S.C. § 2254(d)(6) (pre-amendment). With his Seventh Claim, the Petitioner contends that the death penalty imposed upon him is unreliable, because Judge Moser did not exercise judicial neutrality in resolving the motion to suppress.[10]

The genesis of the assertion of judicial bias by Judge Moser may be found in a series of newspaper articles and letters (one of which was written by Judge Moser himself) that appeared in newspapers of general circulation within the community.

---

**8.** This Court would add the following brief comments. *First,* an aspect of the Petitioner's Third Claim is predicated upon the assertion that Judge Moser violated the rule established by the Supreme Court in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by instructing the jury that it would merely recommend that the death penalty be imposed. The Sixth Circuit rejected a similar argument in *Mapes v. Coyle,* 171 F.3d 408 (6th Cir.1999). *Second,* with his Sixth Claim, the Petitioner contends that Judge Moser violated *Lockett, supra,* by excluding evidence from the penalty phase about what other juries had done in other capital cases. *Lockett* only requires the admission of mitigating evidence that is relevant to a defendant's character, record or the offense he committed. That decision does not require the introduction of evidence to permit a jury to make a comparative evaluation across a broad spectrum of capital cases. *Third,* with his Eighth Claim, the Petitioner alleges that he was denied effective assistance of counsel, because his trial counsel retained an expert who committed malpractice. The Petitioner has not asserted that Dr. Hartings, the expert retained by his trial counsel, was unqualified; rather, DePew merely suggests that Dr. Hartings erroneously scored the MMPI test he had given. The Petitioner has cited no authority for the proposition that trial counsel fails to render effective assistance, because the licensed psychologist he has selected commits an error in performing a test. Moreover, the Petitioner has failed to establish that he was prejudiced thereby. The psychologist retained by his counsel on Petitioner's request for post-conviction relief would have diagnosed DePew as suffering from "sadistic personality disorder." Only a vivid imagination could suppose that such would be helpful testimony in the penalty phase of a triple homicide by stabbing case.

**9.** The Petitioner also argues that the confession was obtained in violation of his Sixth Amendment right to counsel. Judge Merz rejected that contention, concluding that the Petitioner's right to counsel had not attached at the time of his confession. *See* Doc. # 125 at 27. *This Court agrees with that conclusion* and sees no need to elaborate upon Judge Merz' reasoning in that regard.

**10.** The Petitioner has not argued that any action of Judge Moser, other than his ruling on the motion to suppress, was improper due to his bias.

The articles and letters began to appear before the crime which ultimately led to the Petitioner's prosecution and continued to be published even after his trial. The Petitioner has succinctly summarized the relevant articles and letters (see Doc. # 130 at 8–11); therefore, this Court need not recount them in detail. The majority of the cited materials relate to a decision by a three-judge panel, of which Judge Moser was a member, to sentence Bradley Gill to life imprisonment, with the possibility of parole after 20 years, rather than to impose the death penalty upon him. As the materials cited by the Petitioner indicate, that decision was not favorably received within the community, with the predictable result being that Judge Moser and his colleagues were severely criticized. The Petitioner also cites a letter to a local newspaper, written by Judge Moser after that decision, wherein he indicated that Butler County juries had failed to impose the death penalty in a number of cases, because the Ohio legislature had put too many impediments in the way of the prosecution of death penalty cases (in other words, the fault was with the legislature, rather than with judges and juries). In addition, the Petitioner has cited an article, written shortly after Judge Moser had overruled the suppression motion, quoting him as stating that "no trial judge enjoys putting an alleged killer back into society on a technicality. If I have a doubt, I'm going to give the benefit of that doubt to law enforcement officers." See Petitioner's Ex. B–10.

■ There is no doubt that Judge Moser was under and felt the political pressure incident to handling a high-profile homicide case in the relatively small community that was Butler County in the mid–1980s. He and other members of the Common Pleas Bench had been criticized, in the months leading up to the DePew trial, for their decision in at least one widely publicized trial, the Bradley Gill matter. Unlike his colleagues on that prior three-judge panel, Judge Moser, alone, had to face the voters in a fast approaching judicial election. Certainly, his comments to the media, coupled with his statements attempting to shift the blame to the legislative branch for prior decisions sparing the lives of persons charged with death penalty offenses, whether tried before him or his colleagues, demonstrates the concern that he had. However, assuming the truth of the foregoing, this Court is simply unwilling, based upon the state of this record, to conclude that, as a result of such pressure, Judge Moser purposefully or even unintentionally "went into the tank," by rendering a decision, contrary to the evidence, simply to satisfy his community's thirst for vengeance or to assure his re-election. To make such a quantum leap would not do justice to Judge Moser, a jurist who earned a reputation for excellence and integrity during his tenure on the Bench, and it would, in addition, establish a bright-line rule, every time a Judge renders an opinion in a highly publicized case, and makes a controversial comment, prior or subsequent thereto, that said Judge's opinion, findings of fact and conclusions of law were not the product of his reasoned deliberations and the application of proven facts to law, but rather of passion, prejudice, political pressure and knuckling under to the popular mood. While it may well be possible that such a conclusion is applicable in a given case, same has no applicability to the decision rendered by Judge Moser in *this* Petitioner's trial proceedings.

Therefore, the Court rejects the Petitioner's assertion that Judge Moser was biased and concludes that Judge Merz properly applied the presumption of correctness to that Judge's factual findings, pertaining to Petitioner's motion to suppress his confession, and correctly rejected the Petitioner's Seventh Claim. In addition, for the reasons set forth by Judge Merz in his filing, this Court agrees that, applying the presumption of correctness, Petitioner's confession was neither obtained in violation of *Miranda* nor involuntary. Accordingly, the Court overrules the

Petitioner's Objections (Doc. # 130) to the Magistrate Judge's Report and Recommendations (Doc. # 125), as those Objections relate to his Second and Seventh Claims. The Magistrate Judge's filing is adopted with regard to these Claims.

### B. Petitioner's Fifth Claim

With his Fifth Claim, the Petitioner asserts that his conviction and sentence violate the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, because "the jury was not instructed upon and did not find him guilty of all of the elements of the offense including the aggravating circumstances in Ohio Rev. Code § 2929.04(A)(7)." The indictment charged the Petitioner with three counts of aggravated murder, in violation of Ohio Revised Code § 2903.01(B). Each of those counts contained three death penalty specifications or aggravating circumstances, to wit: 1) the commission of a purposeful murder while he was committing or attempting to commit the offense of aggravated burglary, an aggravating circumstance pursuant to Ohio Revised Code § 2929.04(A)(7); 2) the commission of a purposeful murder while he was committing or attempting to commit the offense of aggravated arson, also an aggravating circumstance pursuant to § 2929.04(A)(7); and 3) purposefully murdering two or more persons, an aggravating circumstance pursuant to Ohio Revised Code § 2929.04(A)(5). With this Claim, the Petitioner focuses exclusively upon § 2929.04(A)(7), which provides:

(A) Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the

Revised Code and proved beyond a reasonable doubt:

\* \* \*

(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnaping, rape, aggravated arson, aggravated robbery, or aggravated burglary, *and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.*

(Emphasis supplied). As the Petitioner points out, Judge Moser failed to instruct the jury that, to establish death penalty specifications predicated upon § 2929.04(A)(7), the state was required to prove beyond a reasonable doubt, either that the Petitioner was a principal offender in the commission of the aggravated murder or that he had committed that offense with prior calculation and design. During post-conviction proceedings, the Butler County Court of Appeals concluded that the failure to instruct in that regard constituted harmless error. *See State v. Depew,* 1992 WL 193691 at *2. For reasons which follow, this Court agrees.

As an initial matter, it cannot be questioned that the failure to instruct on all elements of a crime is subject to a harmless error review. For instance, in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the United States Supreme Court held that the failure to submit the element of materiality to the jury, in a prosecution charging the defendant with mail fraud, wire fraud, tax fraud and filing false income tax returns, could constitute harmless error.[11]

11. With his Notice of Additional Authority in Support of Objection (Doc. # 132), the Petitioner has cited *United States v. Du Bo,* 186 F.3d 1177 (9th Cir.1999). That case was an appeal from a conviction for violating the Hobbs Act, 18 U.S.C. § 1851. Before his trial, the defendant had unsuccessfully moved to dismiss the indictment, arguing that it failed to allege that he had acted with the requisite *mens rea.* The District Court denied that motion, and the defendant was convicted. Upon appeal, the Ninth Circuit reversed, writing:

Thus, the question becomes whether it was harmless error to fail to instruct the jury that the Petitioner could not be found guilty of the § 2929.04(A)(7) specifications, unless the state proved beyond a reasonable doubt that he had been the principal offender or had committed the aggravated murders with prior calculation and design. If ever there was a case in which the failure to instruct on an element of a crime constituted harmless error, this is the one. In large part, the Petitioner was convicted on the basis of his recorded confession. In that confession, the Petitioner did not indicate that anyone other than himself had been involved in the three murders. Rather, he confessed to having personally stabbed the three occupants of the house and then starting the fire. Throughout these lengthy proceedings, there has never been a shred of evidence that the Petitioner acted other than as the *sole* participant, while committing these offenses. The evidence could not possibly support a finding that the Petitioner was guilty of aggravated murder, other than as the principal offender.

Accordingly, the Court the Court overrules the Petitioner's Objections (Doc. # 130) to the Magistrate Judge's Report and Recommendations (Doc. # 125), as those Objections relate to his Fifth Claim. The Magistrate Judge's filing is adopted in this regard.

The final question to resolve is whether this Court should issue a certificate of probable cause, in accordance with the pre-AEDPA version of 28 U.S.C. § 2253. The Sixth Circuit has held, in light of

*Lindh v. Murphy, supra,* that this version of § 2253 must be applied in cases such as the present one, which were filed before the effective date of the AEDPA. *See e.g., Norris v. Schotten,* 146 F.3d 314, 322 (6th Cir.), *cert. denied,* 525 U.S. 935, 119 S.Ct. 348, 142 L.Ed.2d 287 (1998); *Arredondo v. United States,* 120 F.3d 639, 640 (6th Cir. 1997). Under the post-AEDPA version of § 2253, a petitioner may appeal only if he has obtained a certificate of appealability. Such a certificate differs from a certificate of probable cause, in that the issues that can be appealed are limited to those set forth in the certificate of appealability. A certificate of probable cause, on the other hand, allows a petitioner to appeal all aspects of the District Court's judgment. In *Norris,* the Sixth Circuit explained:

In the pre-AEDPA world, state prisoners who were denied a writ of habeas corpus from the district court were required to obtain a certificate of probable cause from either the "justice or judge who rendered the [final] order or a circuit justice or judge" before an appeal could be taken to the court of appeals. 28 U.S.C. § 2253 (1994). More important, this court has held that "the grant of [a] certificate of probable cause by the district court, *in spite of [any] limiting provision,* brings before [the court of appeals] the final judgment for review in all respects." *Houston v. Mintzes,* 722 F.2d 290, 293 (6th Cir.1983) (emphasis added). Thus, in stark contrast to the rules prescribed under AEDPA which require an itemization of appealable is-

---

We hold that, if properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment.

*Id.* at 1179. Petitioner points out that his indictment failed to allege either that he had acted as a principal offender or that he had committed the offenses with prior calculation and design. This Court rejects the Petitioner's contention that *Du Bo* supports his Objections. He has never alleged in this proceed-

ing or before the Ohio courts that he was denied a federal constitutional right, because his indictment failed to recite all of the elements of § 2929.04(A)(7). In addition, the Indictment Clause of the Fifth Amendment does not apply to the states. *See e.g., Fields v. Soloff,* 920 F.2d 1114 (2nd Cir.1990). Moreover, in *Du Bo,* the Ninth Circuit distinguished *Neder,* because that case had involved the failure to instruct a petit jury on the element of an offense (the precise argument presented by Petitioner herein with his Fifth Claim), rather than the failure of a grand jury to include such an element in an indictment.

sues, in the pre-AEDPA context the court could not pick and choose which issues to review.

146 F.3d at 322–23. Therefore, this Court need not decide whether the Petitioner is entitled to appeal each particular Claim on which this Court has denied relief. Indeed, such a determination would be of no import.

In *Lozada v. Deeds*, 498 U.S. 430, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991), the Supreme Court restated the applicable standards for determining whether to issue a certificate of probable cause:

> In *Barefoot v. Estelle*, 463 U.S. 880, 892–893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), we delineated the standards for issuance of a certificate of probable cause. We agreed with the Courts of Appeals that had ruled that "a certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.' " *Id.*, at 893, 103 S.Ct. 3383 (quoting *Stewart v. Beto*, 454 F.2d 268, 270, n. 2 (C.A.5 1971), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)). We also quoted with approval *Gordon v. Willis*, 516 F.Supp. 911, 913 (N.D.Ga.1980) (citing *United States ex rel. Jones v. Richmond*, 245 F.2d 234(CA2), *cert. denied*, 355 U.S. 846, 78 S.Ct. 71, 2 L.Ed.2d 56 (1957)), which explained that in order to make a substantial showing of the denial of a federal right a petitioner who has been denied relief in a district court " 'must demonstrate that the issues are debatable among jurists of reason; that

a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further." ' " 463 U.S., at 893, n. 4, 103 S.Ct. 3383.

*Id.* at 431–32, 111 S.Ct. 860. This Court concludes that DePew has made a substantial showing of the denial of a federal right. In other words, he has presented issues which are debatable among jurists of reason. Accordingly, this Court will issue a certificate of probable cause.

It is anticipated that Petitioner will seek leave to appeal *in forma pauperis*. Such a motion will be granted.

This Court grants Petitioner a writ of habeas corpus, vacating the sentence of death imposed upon him.[12]

This Court directs that judgment be entered in favor of the Petitioner and against the Respondent on the First Claim of the Petition, and in favor of the Respondent and against the Petitioner on all other Claims.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

12. Judge Merz recommended that a conditional writ of habeas corpus be granted, with the condition being that the Petitioner be afforded a new penalty phase trial. The Court does not agree. This Court has vacated the sentence of death imposed upon the Petitioner, *because that sentence was ordered after* the penalty phase of his trial, which had been rendered fundamentally unfair by prosecutorial misconduct. Under the law of Ohio, as it existed when the Petitioner committed the crimes for which he was sentenced to death, there was "no statutory authority allowing the imposition of the death penalty upon resen-

tencing." *State v. Penix*, 32 Ohio St.3d 369, 373, 513 N.E.2d 744, 748 (1987). *See also*, *State v. Bays*, 87 Ohio St.3d 15, 716 N.E.2d 1126 (1999). In *Penix*, the Ohio Supreme Court refused to create a procedure that would permit a second penalty phase to be held, following the vacation of the death sentence imposed upon a defendant, as a result of an error which had occurred during the initial penalty phase of his trial. 32 Ohio St.3d at 373, 513 N.E.2d at 748. Of course, the matter of resentencing is for the courts of Ohio to address.